Filed 7/30/25  P. v. Santos CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHEENA SANTOS,<br><br>    Defendant and Appellant. | B334434, B339354<br><br>(Los Angeles County<br>Super. Ct. No. VA106410) |

Appeal from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2022, Sheena Santos filed a petition pursuant to Penal Code[1] section 1172.6 challenging her 2011 conviction for the first degree murder of Mikko Brooks. Section 1172.6 permits defendants convicted under theories of homicide invalidated by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437)—including the natural and probable consequences doctrine and certain felony murder theories—to file a petition seeking resentencing. (§ 1172.6, subd. (a).) If a petition sets forth a prima facie case for relief, the court must hold an evidentiary hearing at which the prosecution bears the burden of "prov[ing], beyond a reasonable doubt, that the petitioner is guilty" under a still-valid theory of murder. (§ 1172.6, subd. (d)(3).)

The trial court here conducted an evidentiary hearing on Santos's petition. At the hearing, the parties elected to rely exclusively on the existing record of Santos's jury trial, at which the prosecution had argued Santos aided and abetted codefendant Jimmy Gonzalez in the murder because of Brooks's affiliation with a rival gang. Based on its review of the trial record, the court found Santos guilty beyond a reasonable doubt of first degree murder as a direct aider and abettor—a theory of homicide that remains valid post-Senate Bill No. 1437. (See *People v. Curiel* (2023) 15 Cal.5th 433, 462 (*Curiel*).) The court therefore denied Santos's petition.

Santos now asks us to reverse, arguing the trial evidence was insufficient to support the court's finding. We disagree. Substantial evidence—including lay and expert witness testimony, cellular phone records, and forensic analysis—supports that Santos directly aided and abetted Brooks's murder. We therefore affirm.

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]

### A. *Trial and Prior Appellate Proceedings*

On the morning of January 9, 2008, law enforcement responded to a 911 call requesting emergency assistance at Brooks's apartment in Bellflower, California. Officers found no signs of forced entry. In one of the apartment's two bedrooms, officers discovered Brooks's body "bound by a telephone cord from her ankles to her wrists." "There was . . . a . . . towel on top of [Brooks's] head," she "had wounds to her face[,] and she had what appeared to be [a] through and through gunshot wound to her head." A detective observed the phrase "20 Crip" tattooed on Brooks's body.

Officers recovered an expended bullet and cartridge case from the scene, and an autopsy confirmed Brooks died from the gunshot wound. In addition, a toxicology screen performed by the medical examiner detected methamphetamine and alcohol in Brooks's system.

The district attorney charged Santos and Gonzalez with Brooks's murder. The two were tried together, with separate juries. (See *People v. Santos* (Feb. 20, 2013, B234810) [nonpub. opn.] (*Santos I*).) At trial, the prosecution argued Santos was a member of the Westside Longos gang, and that she and Gonzalez killed Brooks because of Brooks's affiliation with the Rolling 20s Crips, a rival gang. The prosecution theorized that Gonzalez shot

---

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal. We granted the Attorney General's motion that we take judicial notice of the transcripts from Santos's trial, and we take judicial notice of the trial exhibits on our own motion (see Evid. Code, § 459). Our factual summary of Santos's trial derives from these materials.

Brooks in the head with a rifle, and that Santos—who had been living with Brooks—aided and abetted Gonzalez by helping him gain access to Brooks's apartment and by encouraging Brooks to "party," i.e., take drugs, to impede her ability to resist Gonzalez.

The prosecution introduced testimony, physical evidence, and forensic analysis in support of its theory. Brooks's cousin, Chastity Phillips, testified Brooks was allowing "a young Hispanic girl" to live with her because the girl was pregnant, and Brooks "fel[t] sorry for her." Brooks told Phillips, however, "[s]he was going to put the girl out of her house."[3] Investigators recovered Santos's fingerprint from the inside of the front door of Brooks's apartment. And phone records in the months leading up to the murder reflected hundreds of calls between a number registered to Santos and a number registered to Brooks.

Phone records also showed Santos called Brooks at 5:56 a.m. on the morning of the murder. Dayanara Barrett, Brooks's friend, testified she received a call from Brooks approximately 30 minutes later. Barrett could "hear[ ] music playing" in Brooks's apartment, "and [it sounded like Brooks was] speaking to other people." Brooks asked Barrett to "please come over" because "it was an emergency." Barrett agreed to come over after dropping off her son at school. She testified she arrived at Brooks's apartment at approximately 8:00 a.m., discovered Brooks's body, and immediately called 911.

Before Barrett arrived, Marni Hernandez, who was sitting in a parked car near Brooks's apartment complex, saw via her rearview mirror a man enter and exit the complex several times.

---

[3] Phillips further testified she once met the girl, whom she identified as Santos based on a photograph, at Brooks's apartment. At trial, however, Phillips initially identified a juror as the person who had been living with Brooks.

4

Hernandez testified the man was carrying what appeared to be computer or electronics equipment. The final time the man exited the complex, he was accompanied by a "skinny . . . girl," approximately six feet tall, with long, black hair who "looked young" "from the back." Hernandez conceded on cross-examination that she had not seen the girl's face. Hernandez further testified that 5 or 10 minutes after the man and girl left, Barrett entered the apartment complex.

A detective testified that on January 12, 2008, three days after the murder, he stopped Santos for a traffic violation. Gonzalez was a passenger in the car. Detectives recovered a computer tower registered to Brooks and a computer monitor.

Later, detectives also recovered a rifle—which a firearms expert identified as the murder weapon—from the residence of Gonzalez's cousin, Steven Puentes. Puentes testified Gonzalez dropped off the rifle, wrapped in a towel, in early January 2008. Gonzalez placed the rifle in Puentes's bedroom, exited Puentes's home, then reentered accompanied by Santos. Puentes further testified they all watched television together for approximately four hours, and Gonzalez and Santos then left without discussing the rifle.

After Santos's arrest, officers recovered from her person a handwritten note that supported her affiliation with the Westside Longos. The note appeared to have been written by Santos, and it included certain stylized writing—such as the use of a backward letter N—that a gang expert opined would be used only by a Westside Longos member.

Finally, Santos made statements to detectives evidencing her consciousness of guilt. She told detectives she had never met Brooks or visited Brooks's apartment, but these statements were contradicted by the numerous calls Santos had placed to Brooks

(calls that stopped abruptly after the murder) and by the presence of Santos's fingerprint inside the apartment.

In response, the defense introduced evidence that Santos was only 5 feet 3 inches tall, and argued she therefore did not match the description of the six-foot-tall woman seen leaving Brooks's apartment complex shortly after the murder. The defense further argued the prosecution had failed to establish any motive for the killing because Brooks "got along with everybody" and had allowed Santos to live with her. The defense offered testimony from one of Brooks's former roommates in support of the latter argument.

After deliberating for several hours, the jury convicted Santos of first degree murder (§ 187, subd. (a)). The trial court sentenced her to 26 years in prison.

Santos appealed. (See *Santos I*, *supra*, B234810.) She argued, inter alia, that insufficient evidence supported her conviction. (*Ibid*.) We rejected the argument, concluding the trial evidence was sufficient to permit a reasonable jury to find Santos guilty beyond a reasonable doubt, and "we [were] not free to reweigh the evidence." (*Ibid*.) We therefore affirmed Santos's conviction for first degree murder. (*Ibid*.)

### B.    *Section 1172.6 Proceedings*

In May 2022, Santos filed a section 1172.6 petition challenging her conviction. The trial court initially concluded Santos had failed to make a prima facie showing for relief; however, the court reversed its decision sua sponte, issued an order to show cause, and set an evidentiary hearing on the petition.

The evidentiary hearing went forward on July 12, 2024, before a different judicial officer. Neither party introduced any new evidence at the hearing, electing instead to rely on the existing

6

record of conviction. At the conclusion of the hearing, the court found Santos guilty beyond a reasonable doubt of directly aiding and abetting Brooks's murder. The court explained, in pertinent part:

"I don't think that . . . the evidence in this case can in any way beyond a reasonable doubt tell us that Ms. Santos was the actual shooter.

"However, given all of the information surrounding the setup, the affiliation, the motive, the lack of any true indication that the motive was either a robbery or a burglary and [Santos's] behavior after the fact, all indicates to me that, in fact, there was more than sufficient evidence beyond a reasonable doubt that Ms. Santos aided and abetted the first degree murder . . . of the victim in this case."

Santos timely appealed.[4]

## DISCUSSION

### A. *Overview of Section 1172.6 and Standard of Review*

Effective 2019, the Legislature enacted Senate Bill No. 1437 " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual

---

[4] Santos initially filed a premature notice of appeal of the court's ruling denying her petition at the prima facie stage (case No. B334434). Santos later filed a timely notice of appeal from the denial of her petition following the evidentiary hearing (case No. B339354). We granted Santos's motion to consolidate her two appeals for purposes of briefing and argument, and we treat the timely notice of appeal filed in case No. B339354 as the operative notice for purposes of this appeal. Accordingly, we deny as moot Santos's request to amend the notice of appeal filed in case No. B334434.

killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*); see *Curiel, supra,* 15 Cal.5th at p. 448.) As a result, except as permitted under the felony murder doctrine (see § 189), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought," which "shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The Legislature, however, left intact liability for directly aiding and abetting another in committing murder with express malice. (See *Curiel, supra,* 15 Cal.5th at p. 462.)

Senate Bill No. 1437 also added section 1172.6, which provides a procedure whereby "convicted murderers who could not be convicted under the law as amended" may petition to have their convictions vacated and be resentenced on any remaining counts. (*Lewis, supra,* 11 Cal.5th at p. 959.) Via Senate Bill No. 775 (2021-2022 Reg. Sess.), the Legislature extended section 1172.6's relief to defendants convicted pursuant to any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a); see *People v. Antonelli* (2025) 17 Cal.5th 719, 721.)

If a section 1172.6 petition sets forth a prima facie case for relief, the court must issue an order to show cause and hold an evidentiary hearing at which "the trial judge is charged with determining, beyond a reasonable doubt, if the petitioner is guilty of murder under a theory that remains valid after [Senate Bill No. 1437]." (*People v. Vargas* (2022) 84 Cal.App.5th 943, 952; see § 1172.6, subd. (d)(3).)

We review the trial court's factual findings following such an evidentiary hearing for substantial evidence. (*People v. Emanuel*

8

(2025) 17 Cal.5th 867, 885.) "Under this standard, 'we review the record " ' "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact" ' " ' could find beyond a reasonable doubt" that the petitioner is guilty of murder under a still-valid theory. (*Ibid.*)

" 'Our job on review is different from the trial judge's job in deciding the petition. [Although] the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' [Citation.]" (*People v. Davis* (2024) 107 Cal.App.5th 500, 509.) " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the [fact finder's] verdict.' [Citation.]" (*Id.* at p. 510.) " ' "Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." ' [Citation.]" (*Ibid.*)

### B. *Substantial Evidence Supports the Trial Court's Finding that Santos Is Guilty of First Degree Murder as an Aider and Abettor*

Santos contends no substantial evidence supports the court's finding, beyond a reasonable doubt, that she is guilty of first degree murder as an aider and abettor. In particular, Santos argues the trial record lacks substantial evidence of (1) her knowledge of Gonzalez's intent to kill Brooks, (2) premeditation, and (3) any step she took personally to aid the killing. She urges we therefore must reverse the denial of her section 1172.6 petition. In her prior

9

direct appeal, Santos raised largely identical arguments, which we rejected. (See *Santos I*, *supra*, B234810.) In this appeal, we again reject Santos's arguments because we conclude the trial evidence sufficiently supports the court's finding of guilt.

"For a defendant to be liable as a direct aider and abettor, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission. [Citation.] Because the mental state component—consisting of intent and knowledge—extends to the entire crime, it preserves the distinction between assisting the predicate crime of second degree murder and assisting the greater offense of first degree premeditated murder. [Citations.] An aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed [her] own culpable intent. Such an aider and abettor, then, acts with the mens rea required for first degree murder.' " (*In re Lopez* (2023) 14 Cal.5th 562, 579, quoting *People v. Chiu* (2014) 59 Cal.4th 155, 167, superseded by statute on other grounds as noted in *People v. Gentile* (2020) 10 Cal.5th 830, 848–849.)

As we explained in *Santos I*, the prosecution presented substantial trial evidence supporting each element required to convict Santos of first degree murder as a direct aider and abettor:

"Construing the testimony in the light most favorable to the guilty verdict, Santos had lived with Brooks, and called her frequently before the murder. Santos called Brooks for the last time on the morning of the murder; about a half-hour later, Brooks, with voices in the background, called Barrett saying it was an emergency and asking her to come over. Hernandez saw a young man and a young dark-haired woman leaving Brooks's apartment

10

and carrying items including a computer monitor a short time before Barrett arrived. Barrett then discovered Brooks's hogtied body, and Brooks was dead from a bullet through her head. Santos's fingerprint was found on the inside of Brooks's front door.

"Within a day of the murder, Gonzalez and Santos went to [his cousin's] home, where Gonzalez . . . hid[ ] the murder weapon. A month later, Santos was driving with Gonzalez as a passenger when police found Brooks's computer tower hidden in her car's trunk, and a computer monitor behind the front seat. Santos was affiliated with the Longos gang, which had an ongoing rivalry with the Rolling 20's gang with which Brooks was connected. When questioned by the police, Santos lied and said she did not know Brooks and had never been in her apartment or in Bellflower.

"A jury could reasonably presume from the facts in evidence that Santos called Brooks to set her up and get her to open the apartment door; arrived at the apartment with Gonzalez, who subsequently shot and killed Brooks; left the apartment with Gonzalez, carrying some of Brooks's possessions; and Santos and Gonzalez then went to [Gonzalez's cousin's] house, where Gonzalez hid the murder weapon. A rational jury could also conclude from the gang evidence that Santos was affiliated with a gang engaged in a rivalry with the gang [with] which Brooks was affiliated, giving Santos a motive to aid and abet Gonzalez in Brooks's murder. While a jury would not be required so to conclude, the jury in this case found Santos guilty, and we are not free to reweigh the evidence." (*Santos I*, *supra*, B234810.)

We therefore conclude substantial evidence supports the trial court's finding that Santos is guilty of first degree murder beyond a reasonable doubt.

None of Santos's arguments persuades us otherwise. First, she contends that, under *People v. Anderson* (1968) 70 Cal.2d 15

11

(*Anderson*), we should focus our analysis on the sufficiency of the evidence in the following three categories: (1) planning activity, (2) motive, and (3) a manner of killing reflecting premeditation. (*Anderson*, *supra*, 70 Cal.2d at pp. 26-27.) She further contends evidence falling into these categories either is weak or entirely absent in her case.

As Santos concedes, however, "[t]he *Anderson* analysis was intended only as a framework to aid in appellate review; it did not propose to define the elements of first degree murder or alter the substantive law of murder in any way. [Citation.]" (*People v. Perez* (1992) 2 Cal.4th 1117, 1125 (*Perez*).) Thus, "[t]he *Anderson* factors, while helpful for purposes of review, are not a sine qua non to finding first degree premeditated murder, nor are they exclusive." (*Ibid.*) Rather, the ultimate question is " 'whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse.' " (*People v. Bolin* (1998) 18 Cal.4th 297, 332.) And as set forth, *ante*, we conclude the evidence here does support such an inference.

Second, Santos argues that various pieces of the prosecution's evidence, considered in isolation, fail to support any nonspeculative inference of guilt. (See *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 ["inferences that are the result of mere speculation or conjecture cannot support a finding"].) She urges, at a minimum, "the reasonable inferences from the evidence are at least as consistent with her innocence as her guilt."[5] Santos contends, for example, the presence of her fingerprint at Brooks's

_____

[5] We note that even where "some . . . evidence [is] . . . consistent with . . . innoce[nce] . . . , for purposes of substantial evidence review, we are not permitted to draw inferences contrary to the verdict." (*People v. Myles* (2023) 89 Cal.App.5th 711, 740.)

apartment "proves nothing about her involvement in the murder [because] there is no evidence as to when the fingerprint was left there, and . . . Santos was said recently to have been staying with . . . Brooks, so it would not be unusual for her fingerprint to be found in the apartment." Santos advances similar arguments concerning the significance of the cellular phone records, her continued association with Gonzalez, and the gang-related evidence.

But these arguments ignore that " '[t]he focus of the substantial evidence test is on the *whole* record of evidence presented to the trier of fact, rather than on " 'isolated bits of evidence.' " [Citation.]' " (*People v. Medina* (2009) 46 Cal.4th 913, 919, superseded by statute on another ground, as recognized in *People v. Hin* (2025) 17 Cal.5th 401, 441.) And the totality of the trial evidence here provides substantial evidence supporting the court's finding of guilt beyond a reasonable doubt.[6]

Accordingly, we affirm the order denying Santos's section 1172.6 petition.

---

[6] In light of our conclusion, we need not address the Attorney General's alternative argument that the court erred in finding that Santos's petition demonstrated a prima facie case for relief.

## DISPOSITION

The order denying Santos's section 1172.6 petition is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


M. KIM, J.

14